UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| KEVIN A. HORNBUCKLE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:13-CV-00679-CL |
| | ) | |
| v. | ) | **FINDINGS AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MARK D. CLARKE, Magistrate Judge**.

Plaintiff Kevin A. Hornbuckle ("Hornbuckle") seeks judicial review of the final decision

of the Commissioner of the Social Security Administration ("Commissioner") denying his

applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits

("DIB") under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42

U.S.C. §§ 405(g) and 1383(c). Because ALJ's final decision contained errors, the decision

should be **REVERSED AND REMANDED** with instruction for additional administrative

proceedings.

BACKGROUND

Born in 1962, Hornbuckle was 46 years old at the time of alleged disability onset. Tr. 22.

Hornbuckle has a bachelor's degree and a master's degree. Tr. 38. He worked as a school bus

Page 1 – FINDINGS AND RECOMMENDATION

driver prior to June, 2009. Tr. 73, 283. Hornbuckle first applied for Disability Insurance Benefits

and Supplemental on June 22, 2009. Tr. 140-49. Hornbuckle alleged disability as of January 30,

2009 due to lumbar post-laminectomy syndrome with severe disc degeneration of the lumbar

spine. Id. The Commissioner initially denied Hornbuckle benefits. Tr. 89-97, 102-108. On

reconsideration, Hornbuckle requested a hearing. Tr. 109-110. Hornbuckle's hearing was held

before an Administrative Law Judge ("ALJ") on January 19, 2012. Tr. 31. On February 16,

2012, the ALJ issued a decision denying Hornbuckle's claim. Tr. 9-30. The Appeals Council

denied Hornbuckle's requested review of the hearing decision. Tr. 1-5. The ALJ's decision was

the final decision of the agency. Hornbuckle seeks judicial review.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 724 (9th Cir. 2011); see also 20 C.F.R.

§ 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step

sequential process asks the following series of questions:

1.   Is the claimant performing "substantial gainful activity?" 20 C.F.R.
     §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
     significant mental or physical duties done or intended to be done for pay
     or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing
     such work, she is not disabled within the meaning of the Act. 20 C.F.R.
     §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
     substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. Id. at 953; see also Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); Yuckert, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. Tackett, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." Id.; see also 20 C.F.R. §§ 404.1566; 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. Bustamante, 262 F.3d at 953-54;

Tackett, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Hornbuckle

had not engaged in substantial gainful activity since June 17, 2009—the amended onset date. Tr.

14. At step two, the ALJ found Hornbuckle had the following severe impairments: degenerative

disc disease of the lumbar spine and obesity. Tr. 15. At step three, the ALJ found that

Hornbuckle's limitations did not meet or medically equal the criteria for any listed impairment.

Tr. 16-17.

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined

that, from the alleged onset date of June 17, 2009 to May 4, 2010, Hornbuckle could perform

sedentary work with the ability to lift and carry ten pounds occasionally and five pounds

frequently, stand and/or walk for two hours, and sit for six hours, in an eight-hour workday. Tr.

17. In addition, the ALJ found that, based on evidence of postoperative medical improvement

from May 4, 2010 to the date of the decision, Hornbuckle retained the RFC to perform light

work with the ability to lift and carry twenty pounds occasionally and ten pounds frequently, and

stand/or walk for six hours, and sit for six hours per eight-hour workday. Id. At step four, the

ALJ found that Hornbuckle could not perform past relevant work. Tr. 22. At step five, the ALJ

Page 4 – FINDINGS AND RECOMMENDATION

found that Hornbuckle retained the ability to work as a document sorter, a telephone sales clerk, a final assembler, a cashier II, a small product assembler, or an office helper. Tr. 23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. Orn, 495 F.3d at 630; see also Bray, 554 F.3d at 1226-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

If the court finds Commissioner error, the court has discretion to reverse the Commissioner's final decision with or without remand for further administrative proceedings.

Page 5 – FINDINGS AND RECOMMENDATION

See 42 U.S.C. § 405(g); Herman v. Apfel, 211 F.3d 1172, 1177 (9th Cir. 2000). In general, the decision whether to remand for further administrative proceedings turns on the likely utility of such proceedings. See Harman, 211 F.3d at 1178. Good faith errors in the decision of the Administrative Law Judge (ALJ) should not result in an automatic reversal of the Commissioner's decision. When a court does not affirm the agency's decision "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004)); INS v. Ventura, 537 U.S. 12, 16 (2002) (quoted in Benecke, 379 F.3d at 595). Otherwise, "[i]n some cases, automatic reversal would bestow a benefits windfall upon an undeserving, able claimant." Barbato v. Comm'r of Soc. Sec. Admin., 923 F. Supp. 1273, 1278 (C.D. Cal. 1996).

## DISCUSSION

The Commissioner concedes that the ALJ's final decision contained errors and should be remanded. (Defn.'s Brf. & Mot., p. 2, #16). Thus, the court need not determine whether the Commissioner's decision should be upheld. The sole issue is whether the case should be reversed and remanded for further administrative proceedings, or whether the case should be reversed and remanded for immediate payment of benefits.

Hornbuckle argues that the ALJ erred by improperly considering the opinions of treating physicians Glenn Keiper and Mary Gabriele. (Pltf.'s Brf., p. 16, 20, #12). Hornbuckle argues that Dr. Keiper and Dr. Gabriele's opinions should be credited as a matter of law. (Pltf.'s Resp., p. 2, 5, #19). Hornbuckle also maintains that ALJ improperly discredited Hornbuckle's testimony, and that his testimony should be credited by this court. (Pltf.'s Brf., p. 12-15, #12). Additionally, Hornbuckle argues that he has clearly established, through objective medical evidence, the

presence of severe disc degeneration. (Pltf.'s Resp., p. 4, #19).  Accordingly, Hornbuckle states

that no outstanding issues need to be resolved and the court should reverse the ALJ's decision

and remand for immediate payment of benefits. Id. at 7.

The Commissioner concedes that the ALJ improperly considered Dr. Keiper's and Dr.

Gabriele's opinions. (Defn.'s Brf. & Mot., p. 5, #16). The Commissioner also concedes that the

ALJ improperly discredited Hornbuckle's testimony. Id. However, the Commissioner argues that

the ALJ inadvertently attributed notes from Dr. Keiper's physician assistant, Ralph Peterson, to

Dr. Keiper. Id. at 5-6. Thus, the Commissioner maintains that additional proceedings are

necessary to allow the ALJ to properly evaluate Dr. Keiper's opinion. Id. Moreover, the

Commissioner argues that the opinions of Mr. Peterson, Dr. Gabriele, Dr. Christopher Miller,

and Dr. Paulo Coelho include conflicting evidence. Id. at 6-7. Therefore, the Commissioner

argues that these unresolved issues must be resolved before a determination of disability can be

made. Id. at 6.

The Ninth Circuit has held that a court should only credit improperly rejected evidence

and remand for an award of benefits when: (1) the ALJ failed to provide legally sufficient

reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved

before a determination of disability can be made; and (3) it is clear from the record that the ALJ

would be required to find the claimant disabled were such evidence credited. Benecke, 379 F.3d

at 594; Bunnell v. Barnhart, 336 F.3d 1112, 1115 (9th Cir. 2003) (quoting Smolen v. Chater, 80

F.3d 1273, 1292 (9th Cir. 1996)) (hereinafter the Smolen test).

The parties agree that the first part of the Smolen test was satisfied because the ALJ

improperly considered Dr. Gabriele's and Dr. Keiper's opinions, as well as Hornbuckle's

testimony. However, the parties disagree as to the second part of the test. The court agrees with

Page 7 – FINDINGS AND RECOMMENDATION

the Commissioner; there are multiple outstanding issues that need to be resolved before a proper determination can be made.

First, Dr. Gabriele's opinion appears to conflict with Dr. Miller's and Dr. Coehlo's opinions. In December, 2011, Dr. Gabriele, a family practitioner, examined Hornbuckle and noted decreased range of motion of the lumbar spine and paralumbar gluteal muscles spasms and tenderness. Tr. 387. Dr. Gabriele diagnosed chronic lower-back pain. Tr. 389. In March, 2011, Dr. Gabriele completed an application indicating Hornbuckle's medical condition prevented him from working indefinitely in any capacity in any field. Tr. 427.

By contrast, in October, 2011, Dr. Miller, a neurosurgeon, examined Hornbuckle. Tr. 21, 429-30. Dr. Miller observed full motor power, bulk and tone throughout Hornbuckle's legs, with some giveaway, but without evidence of any real loss. Id. Dr. Miller noted that Hornbuckle became tearful and was obviously in discomfort. Tr. 429. Dr. Miller ordered a CT scan. Tr. 429-430. Upon receiving the CT-scan report, Dr. Miller noted that the scan looked better than he thought. Tr. 433. Dr. Miller also noted that Hornbuckle's spinal fusion looked satisfactory with solid bone growth and no evidence of loosening of the cage. Id.

Similarly, in June, 2010, Dr. Coelho, a specialist in rehabilitation and physical medicine in Dr. Keiper's office, noted Hornbuckle had normal symmetric lower extremity strength. Tr. 20, 368-69. Dr. Coelho also noted that Hornbuckle had negative straight leg raising and a normal, nonantalgic gait. Id. At a follow-up appointment in August, 2010, Dr. Coelho stated Hornbuckle appeared more interested in gathering information to support his disability claim than in treatment. Tr. 20, 400. Dr. Coelho, therefore, discharged Hornbuckle. Id.

Dr. Miller's and Dr. Coelho's opinions include demonstrable, conflicting evidence when compared to Dr. Gabriele's. The conflicting evidence needs to be resolved before Hornbuckle's disability can be determined.

Second, the issue of Mr. Peterson's notes needs to be resolved. The ALJ inadvertently attributed Mr. Peterson's notes to Dr. Keiper. Tr. 19, 22. Mr. Peterson is not a treating physician but a physician's assistant. Tr. 293. His notes were incorrectly given the weight of a treating physician. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). Therefore, remanding is necessary so that the ALJ may properly assess Dr. Keiper's opinion and attribute the correct weight to Mr. Peterson's notes.

Finally, the issue of Hornbuckle's testimony needs to be resolved. In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. Smolen, 80 F.3d at 1282. If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; see also Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). If the record contains affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons

for an adverse credibility finding. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Both parties agree that the ALJ improperly discredited Hornbuckle's testimony. Thus, remanding is necessary so that the ALJ may properly consider Hornbuckle's testimony using the Ninth Circuit's two-step analysis.

For the aforementioned reasons, the second part of the Smolen test has not been met. With such unresolved issues, it is unclear from the record that an ALJ would be required to find Hornbuckle disabled and award disability benefits. Thus, the court should reverse and remand the case for further administrative proceedings.

## RECOMMENDATION

The ALJ failed to provide legally sufficient reasons for rejecting the evidence. There are outstanding issues that must be resolved before a determination of disability can be made. Therefore, this court should **REVERSE AND REMAND** the case for further administrative proceedings.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. FED. R. CIV. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED this 3 day of July, 2014.

MARK D. CLARKE

United States Magistrate Judge